IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE JOANN DANIELS          *
          Plaintiff            *
v.                              *
                                *
                                *    Civil Action No. WMN-15-255
JAMES LAWRENCE KERNAN           *
HOSPITAL, INC.                  *
DBA: UNIVERSITY OF MARYLAND     *
REHABILITATION AND              *
ORTHOPEDIC INSTITUTE et al.,    *
          Defendants            *
                                *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Before the Court are two motions: (1) Defendants' Partial
Motion to Dismiss the Amended Complaint, ECF No. 13; and (2)
Plaintiff's Motion for Leave to File Surreply, ECF No. 18.  Upon
review of the parties' submissions and the applicable case law,
the Court determines that no hearing is necessary, Local Rule
105.6, and that both motions will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michelle Daniels brings this action against her
former employer, Defendant University of Maryland Rehabilitation
and Orthopaedic Institute,[1] asserting: race and color
discrimination in violation of Title VII of the Civil Rights Act
of 1964 (Title VII), 42 U.S.C. § 2000e, et seq. (Count I),

---

[1] Defendant University of Maryland Rehabilitation and Orthopaedic
Institute, formerly the James Lawrence Kernan Hospital, is part
of the University of Maryland Medical System Corporation.  For
simplicity, the Court will refer to both parties as "Defendant."

retaliation in violation of the False Claims Act (FCA), 31 U.S.C. § 3730(h) (Count II), and a claim for wrongful discharge under Maryland law (Count III).  Defendant moves to dismiss the claim of color discrimination in Count I on the ground that Plaintiff failed to exhaust her administrative remedies with the Equal Employment Opportunity Commission (EEOC).[2]  Further, Defendant moves to dismiss Count III, asserting that Plaintiff fails to identify a clear mandate of public policy violated by her discharge that is not remedied by the FCA.

Plaintiff was hired by Defendant as a Staff Physical Therapist in 1996.  Plaintiff was promoted several times throughout her career, most recently to Patient Therapy Manager in 2010.  Including Plaintiff, Defendant had four Patient Therapy Managers.  Plaintiff was the only African American Patient Therapy Manager whereas the other three were Caucasian.

Plaintiff alleges that, in March 2013, she discovered Defendant was defrauding Medicare by engaging in a practice known as "flipping."  Generally, Medicare pays for up to three days of physical therapy services following a patient's surgery. Flipping occurs when a physician readmits a patient as an acute care rehabilitation inpatient after only one or two days rather

---

[2] Defendants' Partial Motion to Dismiss does not address Plaintiff's claim of race discrimination in Count I.

than determining the need for further treatment after the allotted three days of physical therapy.

Plaintiff alerted Defendant's managers to this purported Medicare fraud and told her staff not to participate in flipping patients to the rehabilitation unit prior to their allotted three days of physical therapy. On June 19, 2013, Plaintiff's supervisor told Plaintiff her position was being eliminated due to a reduction in force. Plaintiff was the only Patient Therapy Manager terminated. Upon termination Plaintiff asked to be considered for three open physical therapist jobs for which she was qualified. Defendant did not consider Plaintiff for the open positions and instead hired two Caucasian physical therapists.

Plaintiff filed a Charge of Discrimination with the EEOC (EEOC charge) on December 4, 2013. ECF No. 1-2. On October 29, 2014, the EEOC mailed Plaintiff a Notice of Right to Sue. ECF No. 1-1. Plaintiff filed her Complaint in this Court on January 29, 2015. ECF No. 1.

## II. MOTION TO DISMISS

### A. Legal Standards

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "Because jurisdictional limits define the very foundation of judicial authority, subject matter jurisdiction must, when questioned, be decided before any other

matter." <u>United States v. Wilson</u>, 699 F.3d 789, 793 (4th Cir.
2012).  "When a Rule 12(b)(1) motion challenge is raised to the
factual basis for subject matter jurisdiction, the burden of
proving subject matter jurisdiction is on the plaintiff."
<u>Richmond, Fredericksburg, & Potomac R.R. Co. v. United States</u>,
945 F.2d 765, 768 (4th Cir. 1991).  The court should grant a
12(b)(1) motion "only if the material jurisdictional facts are
not in dispute and the moving party is entitled to prevail as a
matter of law."  <u>Id.</u>  Pursuant to Rule 12(b)(1), when a
defendant challenges subject matter jurisdiction "the district
court is to regard the pleadings' allegations as mere evidence
on the issue, and may consider evidence outside the pleadings
without converting the proceeding to one for summary judgment."
<u>Id.</u>

     In evaluating a motion to dismiss filed pursuant to Rule
12(b)(6), the court must accept as true all well-pled
allegations of the complaint and construe the facts and
reasonable inferences derived therefrom in the light most
favorable to the plaintiff.  <u>Ibarra v. United States</u>, 120 F.3d
472, 474 (4th Cir. 1997).  To survive dismissal, "a complaint
must contain sufficient factual matter . . . to 'state a claim
to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A court need not accept a plaintiff's legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### B. Title VII Claim

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a)(1).  "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002).  "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Id.

An EEOC charge "does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is

confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981). On Plaintiff's EEOC charge, she checked the box for discrimination based on race, and wrote:

> I believe I was discriminated against because of my race, Black, for the following reasons: ... 2. I have more experience, more qualifications and a longer tenure than three Caucasian Patient Therapy Managers; Andrea Garrett, Kimberly Goodman, Sheila Schaffer; however, their position was not eliminated and they were not terminated.

ECF No. 1-2. Plaintiff did not check the box for discrimination based on color. ECF No. 1-2.

Plaintiff's assertion that the text of her EEOC charge plainly alleges discrimination on the basis of color demonstrates her conflation of race and color discrimination.[3] Although the categories of race and color discrimination may overlap, they are not synonymous. Color discrimination occurs when pigmentation, coloration, or skin shade or tone is the root of discrimination. "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored

---

[3] Plaintiff directs the attention of the Court to ECF No. 16-1 to demonstrate that the "EEOC understood Daniel's complaint to include color, when it listed 'black' on her charge detail inventory sheet." ECF No. 16 at 6. The word "black" only appears once on this exhibit under the heading of race, a prime example of Plaintiff's treatment of color and race discrimination as if they were one category.

African-American individual is discriminated against in favor of a light-colored African-American individual." Bryant, 288 F.3d at 132 n.5 (citing Walker v. Sec'y of the Treasury, Int'l Revenue Serv., 713 F. Supp. 403, 406-407 (N.D. Ga. 1989)).

Plaintiff's allegations are "devoid of any hint that [her] particular skin tone motivated the alleged discrimination." Id. In fact, Plaintiff's EEOC charge clearly states that she was discriminated against due to "race, Black," when she was terminated instead of three Caucasian (race), therapy managers. ECF No. 1-2. Although Plaintiff correctly argues that mere failure to check a box is not fatal to exhaustion, ECF No. 16 at 5, the Court finds that failure to put forth a specific allegation describing color discrimination or showing how color discrimination was related to Plaintiff's allegation that she was discriminated against is fatal to her case. See Teasdell v. Baltimore Cty. Bd. of Educ., Civil No. WDQ-13-0107, 2013 WL 4804736, at *4 (D. Md. Sept. 6, 2013) (dismissing retaliation claim for lack of subject matter jurisdiction when the plaintiff did not mark the box for retaliation and her charge narrative did not mention retaliation).

Relying on Bryant, Defendant correctly argues that Plaintiff is precluded from bringing a color discrimination claim. In Bryant, the plaintiff filed an EEOC charge alleging discrimination based on race. 288 F.3d at 132. Subsequently,

the plaintiff's complaint alleged that the defendant

"discriminated against him based on color, race, and/or sex, and

retaliated against him for filing complaints of discrimination

with the EEOC."  Id. at 132-133.  The court found the

"administrative investigation of retaliation, and color and sex

discrimination, [] could not reasonably be expected to occur in

light of the [plaintiff's] sole charge of race discrimination."

Id. at 133.

Analogous to Bryant, the scope of Plaintiff's Complaint

exceeds the limits set by the allegations of Plaintiff's EEOC

charge.  Plaintiff did not provide information to the EEOC which

could reasonably be expected to lead to an administrative

investigation of color discrimination.  Rather, the allegations

in Plaintiff's EEOC charge focus solely on discrimination based

on race, referring to Plaintiff's race interchangeably as

"Black" and "African American" and referencing her coworkers who

received the allegedly favored treatment as "Caucasian."

**C. Wrongful Discharge**

Maryland recognizes "a cause of action for [wrongful]

discharge by an employer of an at will employee when the

motivation for the discharge contravenes some clear mandate of

public policy."  Adler v. Am. Standard Corp., 432 A.2d 464, 473

(Md. 1981).  The "public policy in question must be a

preexisting, unambiguous, and particularized pronouncement, by

constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation." Porterfield v. Mascari II, Inc., 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002). The Maryland tort of wrongful discharge is unavailable when the statute relied upon as the source of public policy has its own remedial scheme for vindication of that policy. Id. at 245-246.

Defendant's primary argument for the dismissal of Plaintiff's wrongful discharge claim is that the FCA represents the public policy interest and provides a statutory remedial scheme to vindicate that interest. ECF No. 13. Defendant points out that Maryland courts have routinely held that a plaintiff may not proceed with a wrongful discharge claim when the FCA provides the public policy interest. See Glynn v. EDO Corp., 536 F. Supp. 2d 595, 616 (D. Md. 2008) ("Glynn has a civil remedy in the form of the FCA retaliation provisions, and Maryland law precludes the use of the wrongful discharge tort to recover in the name of the same public policy interest.").

Plaintiff counters by arguing that "[a]lthough the clear public policy of the FCA is to prevent fraudulent Medicare payments," [] "there is no remedy for termination due to refusal to participate in Medicare fraud." ECF No. 16 at 11 (emphasis added). Plaintiff's argument fails because the FCA retaliation

provision protects employees from being "discharged, demoted,
suspended, threatened, harassed, or in any other manner
discriminated against in the terms and conditions of employment
because of the lawful acts done by the employee in furtherance
of a [civil action for false claims] or other efforts to stop
[one] or more violations [under the FCA]."  31 U.S.C. § 3730(h)
(emphasis added).  Whether the conduct causing Plaintiff's
termination was her refusal to participate in defrauding the
government, i.e. an "effort to stop," or reporting of efforts to
defraud the government, the conduct is remedied under the FCA
retaliation provision.

Plaintiff points out that there may be multiple sources of
public policy and that when "'at least one public policy mandate
violated by a discharge does not arise from a law that provides
its own remedy for the violation, an action for abusive
discharge based on that violation may lie.'"  ECF No. 16 at 11
(citing Insignia Residential Corp. v. Ashton, 755 A.2d 1080,
1081 (Md. 2000)).  Plaintiff claims the additional public policy
sources her wrongful discharge suit seeks to vindicate include
"multiple laws implicated by Medicare fraud including 18 U.S.C.
§ 1001 (making false statements to the government), 18 U.S.C. §
287 (making false claims to the government), 18 U.S.C. § 1341
(fraud by mail), 18 U.S.C. § 1343 (fraud by wire, radio, or

10

television), and 18 U.S.C. § 1347[4] (intentional health care benefit fraud)."  ECF No. 16 at 8.

Nevertheless, the sole public policy Plaintiff seeks to vindicate is protected by the FCA.  The five statutes cited by Plaintiff merely provide the federal government with other tools to protect against attempts to defraud the United States.  As stated in Glynn "'the purpose of the tort of abusive discharge is to vindicate a public policy in the absence of any civil remedy.'"  536 F. Supp. 2d at 616 (quoting Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 482-483 (D. Md. 2002)).  Because Plaintiff has a civil remedy under the FCA, and fails to adequately point to a separate public policy interest implicated by her termination, the Court declines to embark on a "judicial foray into the wilderness of discerning 'public policy' without clear direction from a legislative or regulatory source." Milton, 138 F.3d at 523.

---

[4] In Magee v. DanSources Tech. Serv., Inc., the court found the plaintiff's claim for wrongful discharge could be based on the public policy emanating from 18 U.S.C. § 1347.  769 A.2d 231, 257 (Md. Ct. Spec. App. 2001).  The health care benefit fraud in that case involved the submission of a false claim to a private insurance carrier.  Id. at 236.  In this case, because Defendant allegedly defrauded a United States government health care program, Medicare, the public policy implicated is the same as that embodied by the FCA.

### III. MOTION FOR LEAVE TO FILE SURREPLY

Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed.  Local Rule 105.2(a).  Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.  <u>Khoury v. Meserve</u>, 268 F. Supp. 2d 600, 605 (D. Md. 2003).  Plaintiff argues that she is justified in filing a surreply because Defendant asked the Court to consider sanctions against Plaintiff's counsel for the first time in its Reply instead of its Partial Motion to Dismiss.  The Court grants Plaintiff's Motion for Leave to File Surreply because Plaintiff has not had an opportunity to contest the matter of sanctions.

Sanctions are not warranted in this case.  First, Defendant failed to comply with the procedural requirement of Federal Rule of Civil Procedure 11(c)(2), requiring a motion for sanctions to be made separately from any other motion.  Additionally, Plaintiff is entitled to maintain a novel legal position and has not pursued these issues in bad faith.  Although a legal claim may be so inartfully pled that it cannot survive a motion to dismiss, such a flaw will not in itself support Rule 11 sanctions.  <u>Simpson v. Welch</u>, 900 F.2d 33, 36 (4th Cir. 1990).

## IV. CONCLUSION

For the above-stated reasons, the Court will grant Plaintiff's Motion for Leave to File Surreply and Defendants' Partial Motion to Dismiss the Amended Complaint.  A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: September 29, 2015